[Civ. No. 15501. First Dist., Div. Two. June 30, 1953.]

MABEL McRAY, Appellant, v. HERMAN WINTER et al., Respondents.

Robert K. Byers, Ernest Ruscini and Marshall S. Hall for Appellant.

Machado & Machado for Respondents.

McCOMB, J.*—From a judgment in favor of defendant Herman Winter, after trial before the court in an action predicated upon plaintiff's complaint in ejectment and defendant's cross-complaint to quiet title to a parcel of property, plaintiff appeals.

*Facts*: Defendant and Kate Johnson were married on September 30, 1918. At the time of their marriage, Mrs. Winter owned as her separate property a lot 60′ x 40′ located in the

---

*Assigned by Chairman of Judicial Council.

city of Gilroy. There was a mortgage of $1,000 on the lot and on an adjacent lot also owned by Mrs. Winter, which was likewise her separate property.

Defendant, who was a mechanic and also steadily employed, gave all of his wages to his wife. In 1922, she had saved $1,800 from his earnings and they discussed the question of building a dwelling house on the lot here in question, and it was agreed that his earnings should be used to pay for such house and that the lot and house should become the community property of the parties.

The trial court found that the property was in fact community property.

*Questions*: First: *Was there substantial evidence to sustain the trial court's finding that the lot which had been the separate property of Mrs. Winter, and the house built thereon, had been transmuted from her separate property to the community property of defendant and his wife?*

*Yes.* ██ Separate property of either spouse may be transmuted into community property without the necessity of a written agreement and the intention of the parties that property held in the name of one is to be considered as community property may be shown by circumstantial as well as direct evidence. (*Tomaier* v. *Tomaier,* 23 Cal.2d 754, 757 [5] [146 P.2d 905]; *Williamson* v. *Kinney,* 52 Cal.App.2d 98, 102 [1] [125 P.2d 920].)

██ It is also settled that on appeal all conflicts in the evidence must be resolved in favor of the respondent (in this case the defendant) and all legitimate and reasonable inferences indulged in to uphold the finding of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [2] [143 P.2d 689].)

██ It is likewise true, as stated by Mr. Justice Dooling in *Estate of Raphael,* 115 Cal.App.2d 525, 530 [5] [252 P.2d 979], "The 'clear and convincing evidence' rule is one for the guidance of the trial court and all that is required on appeal is that the finding finds substantial support in the evidence. (Citing cases.)"

██ Applying the foregoing rules to the facts in the instant case we find that the record discloses that when defendant and his wife discussed building on the lot they had a conversation, concerning which defendant testified as follows:

"Q. Did you at any time have an agreement with Mrs. Johnson to pay off the property and take an interest in it? A. Yes, we talked that over.

"Q. When was that discussed? A. It was about '22, early part of '22.

"Q. What did you agree on at that time? A. It was to build a house.

"Q. To build a house? A. Yes.

"Q. Did you agree that you would have an interest in it? A. Yes, talked about building a house there, and she said she had $1,800 of my wages saved. We could use that and take a loan out for the balance, and I said, 'Where would I come in at? This property belonged to you before I married you.' And she said we'd build a house together and both houses would belong to both of us, and when you die both houses would be mine, and if I die both houses would go to you.''

. . . . . . . . . . . . .

"A. In 1922, yes, we did.

"Q. All right. And concerning the building of what property? A. The little house on the lot.

"Q. And that is known as what property? A. That's 38 North Rosanna.

"Q. All right. And what was that conversation that you had with your wife? A. Well, my wife and I were talking about building a little house to have a little income, and she says she had $1800 of my wages saved that we could use on it and that. I said, 'Where do I come in at? You had this lot before we were married.' And she said, 'We build the house together and both houses be yours if I die, and if you die, both houses be mine.' That is what she told me.''

. . . . . . . . . . . . .

"Q And at that time you proceeded to build the small cottage, and that is known as 38 North Rosanna? A. We agreed to build a little house.

"Q. And at that time, you have testified that you agreed that it would belong to both of you? A. Yes.

"Q. Both places? A. That's right.

"Q. Now, was anybody else present at that time when your wife talked this over with you? A. No, just my wife and I.

"Q. Was anything said about reducing it to writing? A. In writing?

"Q. Yes. A. No.

"Q. Was anything said about making a joint tenancy deed out of it? A. We made the agreement; we were man and wife, and naturally that is the way I trusted her.

"Q. Did you ask her to put the property partly in your name and partly in her name? A. She said we'd build the house together and both houses would belong to both of us."

In addition to the foregoing evidence, testimony was received that $1,800 of defendant's wages went into the building placed on the property; that a loan on the property was obtained from the Bank of Italy in the sum of $1,500, which was paid by defendant's wife with money obtained from his earnings; that from 1922, until the death of defendant's wife, improvements and repairs on the property were made by defendant or paid for out of his wages.

Clearly, the foregoing constituted substantial evidence to sustain the trial court's finding that the property was community property of defendant and his wife at the time of her death. (See *Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398]; *Estate of Raphael,* 91 Cal.App.2d 931, 936 [3] [206 P.2d 391].) It needs no citation of authority in support of the proposition that we must disregard conflicting evidence and inferences.

Second: *Did the trial court err in excluding the will of Kate Johnson Winter, which will purported to devise the property in question to plaintiff?*

This question is not properly before this court for consideration for the reason that an examination of the record fails to disclose that the trial court made a ruling excluding the will from evidence. ▪ The law is settled that before error may be predicated upon the failure of the trial court to receive evidence the party aggrieved must obtain a ruling from the trial court upon his offer of proof. (*Campbell* v. *Genshlea,* 180 Cal. 213, 220 [8] [180 P. 336]; *cf. Smith* v. *Smith,* 163 Cal. 630, 631 [126 P. 475].) This not having been done, we will not pass upon the question. (*Flynn* v. *Young,* 25 Cal. App.2d 614, 619 [5] [78 P.2d 245].)

Third: *Did the trial court commit prejudicial error in finding that: (a)* "*at all times mentioned herein, said defendant and said Kate Johnson Winter were the owners and entitled to possession of the real property described in plaintiff's amended complaint*"; *(b) the property in question was converted into community property by agreement and* "*by their respective acts and declarations during their marriage*"?

*No.* ▪ (a) Plaintiff contends that the finding "that at all times mentioned" defendant and his wife were the owners of the property in question is contrary to the admitted fact

that when Mrs. Johnson married defendant the property was her separate property. This is true, but since findings must be construed as a whole and under article VI, section 4½ of the Constitution nonprejudicial error disregarded, it is obvious that the construction placed on the finding by plaintiff is immaterial and that no prejudicial error resulted to her. Therefore, we disregard it.

 (b) Plaintiff claims that the finding that the property was converted into community property by acts of the parties is not supported by the evidence. This contention is devoid of merit for the reason that there was evidence, as set forth above, of both the declarations of the parties and their acts which sustain the trial court's finding.

 Fourth: *Did the trial court commit prejudicial error in failing to find that the agreement by which the property was converted into community property was an oral one?*

*No.* The trial court made a finding of the ultimate fact, which was that the separate property of defendant's wife had been transmuted into community property. As community property it is entirely immaterial whether the evidence resulting in this transmutation was oral, written or both.

 Fifth: *Was it prejudicial error for the trial court not to find that the action as to plaintiff McRay's co-plaintiff, Albert Johnson, should be dismissed without prejudice?*

*No.* Clearly if there was any error in failing to make such a finding the only party who would be aggrieved and could take advantage thereof was plaintiff Alfred Johnson, who is not here appealing.

Affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1953.